**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

GISELL ADRIANA PEREIRA ONTIVEROS     )     CASE NO. 3:26-cv-632

                    Petitioner,     )     CHIEF JUDGE SARA LIOI

vs.     )

    )     **MEMORANDUM OPINION
AND ORDER**

WARDEN CORRECTIONS CENTER OF NORTHWEST OHIO, *et al.*,

                    Respondents.     )

Petitioner Gisell Adriana Pereira Ontiveros ("Ontiveros" or "petitioner"), pro se, an immigrant detained at the Corrections Center of Northwest Ohio, petitions for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. No. 1 (Petition).)[1] The Court directed respondents the Warden of the Corrections Center of Northwest Ohio, the Director of U.S. Immigration and Customs Enforcement ("ICE"), and the Director of ICE's Detroit Field Office (collectively, the "government" or "respondents") to show cause why the writ should not be granted. (Doc. No. 5, at 3.) The government responded (Doc. No. 6 (Return of Writ)), and petitioner replied in support of her petition. (Doc. No. 8 (Reply).) Upon review, the Court finds that the submissions raise no issues of fact necessitating an evidentiary hearing. Resultantly, the petition is ripe for review. For the reasons stated below, the petition is GRANTED.

---

[1] With her petition, Ontiveros filed a "motion for custody redetermination/bond hearing[.]" (Doc. No. 3.) Because the motion sought substantially similar relief to the petition, the Court construed the motion as a supplement to the petition. (Doc. No. 5 (Order), at 1 n.1 (All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system).)

## I.     BACKGROUND

The relevant facts are uncontested. Ontiveros is a Venezuelan citizen who first entered the United States on July 28, 2024, at the Hidalgo, Texas port of entry. (Doc. No. 1, at 5; Doc. No. 6, at 1.) Ontiveros was processed as an "arriving alien" (Doc. No. 1-4 (I-94 & Notice to Appear), at 3) and found inadmissible for failing to have proper entry documents. (Doc. No. 6-1 (Notice to Appear), at 4.) She was then paroled into the United States.[2] (Doc. No. 1, at 2; Doc. No. 6, at 1–2.) Ontiveros's parole expiration date was later moved up to April 18, 2025. (Doc. No. 6, at 2); *compare* (Doc. No. 1-4, at 2 (I-94 form showing parole through July 27, 2026)), *with* (Doc. No. 6-2 (Updated I-94), at 1 (I-94 form showing parole through April 18, 2025).) After her parole expired, Ontiveros applied for asylum in the United States. (Doc. No. 6, at 2; Doc. No. 8, at 2, Doc. No. 1-5 (Notice of Asylum Application).) She was then detained in February of 2026 (Doc. No. 1, at 2; Doc. No. 6, at 2) and did not receive an individualized bond hearing. (Doc. No. 1, at 3.) Petitioner now seeks a writ of habeas corpus. (*See generally* Doc. No. 1.) By way of relief, petitioner seeks her immediate release or, in the alternative, an order requiring an individualized custody hearing. (*Id.* at 3.)

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). While the district courts'

---

[2] While petitioner states at one point that she was "lawfully admitted" (Doc. No. 1, at 5), the documentation she supplied with her petition indicates that she was paroled (Doc. No. 1-4, at 2 (indicating "DT" class of admission, which corresponds to humanitarian parole)), which is a legally distinct concept from admission. *See* 8 U.S.C. § 1182 ("but such parole of such alien shall not be regarded as an admission of the alien . . . .").

habeas powers are somewhat limited in the immigration context, *see Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) ("Congress stripped the courts of jurisdiction to grant habeas relief" for challenges to removal orders), "[f]ederal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal." *Jiang Lu v. U.S. ICE*, 22 F. Supp. 3d 839, 841 (N.D. Ohio 2014) (citing *Demore v. Kim*, 538 U.S. 510, 517–18, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003)); *see also Lemus v. Lynch*, No. 4:26-cv-203, 2026 WL 496731, at *5 (N.D. Ohio Feb. 23, 2026) (finding district court had jurisdiction over immigrant's § 2241 petition claiming statutory entitlement to bond hearing).

## III. DISCUSSION

### A. Statutory Background

This case involves the interplay between the Immigration and Nationality Act's ("INA") detention framework and its parole framework. Beginning with detention, the relevant statutes are 8 U.S.C. §§ 1225(b) and 1226(a). Section 1226(a) is considered the "default rule" for the detention of immigrants "already in the country[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 288–89, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018). Immigrants detained under § 1226(a) may be released on bond or conditional parole, 8 U.S.C. § 1226(a)(2), except for immigrants convicted of or arrested for certain crimes. 8 U.S.C. § 1226(c).

Sections 1225(b)(1) and 1225(b)(2) represent carveouts to § 1226(a)'s default rule and provide for mandatory detention of certain immigrants. *Jennings*, 583 U.S. at 297 ("[Sections] 1225(b)(1) and (b)(2) thus mandate detention[.]"). Section 1225(b)(1), sometimes referred to as the "expedited removal" provision, applies to certain immigrants "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* at 287 (citing 8 U.S.C. § 1225(b)(1)). Specifically, § 1225(b)(1) applies to two subcategories of such immigrants:

3

(1) those "who [are] arriving in the United States" and (2) those "described in clause (iii)" (i.e., those "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"). 8 U.S.C. § 1225(b)(1)(A)(i–iii). "Section 1225(b)(2) is broader [than § 1225(b)(1)]." *Jennings*, 583 U.S. at 287. It applies to "applicant[s] for admission" who are "seeking admission" and "not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A).

Immigrants detained under § 1225(b), while ineligible for bond, may still receive humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). *Jennings*, 583 U.S. at 288. "[A]pplicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.' [] Such parole, however, 'shall not be regarded as an admission of the alien.' [] Instead, when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A) (further citations omitted)).

**B.       Whether Ontiveros's Detention Violates the INA**

The issue here is narrow. Ontiveros argues that her detention is governed by § 1226(a) which provides for a bond hearing. (Doc. No. 1, at 6.) The government argues that Ontiveros qualifies as an "arriving" immigrant, lacks valid entry documents, and is thus subject to mandatory detention (without a bond hearing) under 8 U.S.C. § 1225(b)(1)(A)(i–ii).[3] (Doc. No. 6, at 2–4.)

---

[3] The Court does not understand the government to argue that Ontiveros is an immigrant "described in clause (iii)" of § 1225(b)(1)(A) or that she is subject § 1225(b)(2), § 1226(c), or any other mandatory detention provision.

4

The issue before the Court is thus whether Ontiveros is covered by § 1225(b)(1) as an arriving immigrant or by § 1226(a)'s default rule.

The INA does not define "arriving," so the Court must look to ordinary meaning. *See United States v. Fitzgerald*, 906 F.3d 437, 442 (6th Cir. 2018) ("We start with the disputed term itself, which, if left undefined in the statute, must be given its ordinary or natural meaning." (quotation marks and citation omitted)). The term "arrive" generally means to reach a destination. *See arrive*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/arriving (last visited April 20, 2026). Congress's use of the present participle "-ing" suggests an intent to describe present, ongoing action. *See United States v. Stewart*, 73 F.4th 423, 425 (6th Cir. 2023) ("the present participle. . . means that it expresses present action." (quotation marks and citation omitted)). As such, "arriving" most naturally means "to be in the act of reaching a destination." *See e.g., Martinez Herrera v. Olson*, No. 4:26-cv-52, 2026 WL 561101, at *3 (W.D. Ky. Feb. 27, 2026) ("[T]he plain meaning of the word arriving is being in the process of reaching a destination." (quotation marks and citation omitted)). To be "arriving in the United States" would thus mean "to be in the act of reaching the United States."

On this plain reading, Ontiveros was not "arriving in the United States" when she was detained. To be sure, Ontiveros was arriving when she first presented at the Hidalgo point of entry in 2024. But once Ontiveros was paroled and released into the United States, logically, she was no longer in the act of reaching the United States because she had already reached it. After living in the United States for over a year, Ontiveros cannot be described as "arriving." *See Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *5 (E.D. Mich. Oct. 29, 2025) (accepting petitioner's argument that after almost three years of living in the United States "he was no longer

5

an 'arriving alien' for purposes of § 1225(b)(1)(A)(i)"). Rather, she had already arrived by the time she was detained.

The government resists this conclusion, arguing primarily that Ontiveros was an arriving immigrant when she first presented at the Hidalgo port of entry and that she remained an arriving immigrant despite her parole.[4] (Doc. No. 6, at 2.) The primary authority the government cites for this proposition is 8 C.F.R. § 1.2, which provides, in relevant part,

> Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. *An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked.*

8 C.F.R. § 1.2 (emphasis added).

The Court finds the government's argument based on this regulatory definition unpersuasive. First, the Court is interpreting a statute, not a regulation, and thus "must exercise [its] independent judgment" in interpreting that statute instead of deferring to agency interpretations. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024). Second, while the regulation "define[s] 'arriving alien' . . . [it] do[es] not define 'arriving in the United States[,]'" thus limiting its instructive capacity on this issue. *Martinez Herrera*, 2026 WL 561101, at *3 n.8.

---

[4] The government also dedicates a significant portion of its briefing to arguing that Ontiveros is an "applicant for admission" as that term is defined by the INA. (Doc. No. 6, at 3–4.) The Court agrees that, as an immigrant who is "present in the United States who has not been admitted[,]" 8 U.S.C. § 1225(a)(1) (defining "applicant for admission"), Ontiveros is an applicant for admission. But that hardly ends the analysis. As this and many other courts within the Sixth Circuit have now held, an applicant for admission could be subject to § 1225(b) or § 1226(a) depending on the specific circumstances presented. *See Lemus*, 2026 WL 496731, at *12 n.11 (collecting cases rejecting argument that all applicants for admission were subject to § 1225(b)(2)). The circumstances necessary for § 1225(b)(1)(A)(i–ii) to apply are (1) that the immigrant be arriving in the United States and (2) the immigrant be deemed inadmissible for one of the enumerated reasons. 8 U.S.C. § 1225(b)(1).

Perhaps most importantly, 8 C.F.R. § 1.2's persuasive weight is undercut by its inconsistency with the parole statute. The parole statute provides that upon completion of parole, the immigrant's "case shall continue to be dealt with *in the same manner as that of any other applicant for admission to the United States*." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). As other courts have reasoned, this language does not indicate Congress intended paroled immigrants to retain whatever status they held when they were paroled. *See Araque-Marquez v. Olson*, No. 26-cv-84, 2026 WL 836121, at *2 (E.D. Ky. Mar. 26, 2026) (collecting cases and rejecting that expiration of parole under § 1182(d)(5)(A) "return[s] the undocumented immigrant to the status of an 'arriving alien' at the threshold of the United States"); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025) ("Nor does [§ 1182(d)(5)(A)] say that [parolees] are restored to the status that [they] had at the time of parole." (quotation marks and record citation omitted) (third alteration in original)); *Bekzada v. Fields*, No. 26-cv-57, 2026 WL 696555, at *2 (E.D. Ky. Mar. 12, 2026) ("[T]he expiration of § 1182 parole does not require treating the noncitizen as if they had never been paroled in the first place." (quotation marks and citation omitted)). Rather, a plain reading of this language suggests that "a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country[.]" *Rodriquez-Acurio*, 811 F. Supp 3d at 302.

It is also worth noting that the government's interpretation would render inoperative Congress's command that former parolees be treated as "any other applicant for admission." This Court must, where possible, avoid rendering any word of the statute "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (quotation marks and citation omitted). But if Congress intended for parolees to retain whatever status they held at the time they were paroled, as the government asserts, it is unclear what

significance, if any, this "any other applicant for admission" language would have. Accordingly, the Court rejects the government's argument that an arriving immigrant who is paroled and whose parole expires remains an arriving immigrant even when that term no longer logically applies to them.

The Court is aware of one district judge within the Sixth Circuit to have adopted the government's position that expiration of parole reverts a parolee back to the status they held at the time of parole. *See Chirinos v. Tindell*, No. 3:25-cv-789, 2026 WL 926941, at *11–12 (W.D. Ky. Apr. 6, 2026). The court in *Chirinos* based its conclusion primarily on § 1182(d)(5)(A)'s direction that a former parolee "be returned to the custody from which he was paroled." *Id.* at *11 (citations omitted).

Respectfully, this Court must disagree with *Chirinos*. *Chirinos* incorrectly conflates a return to "custody" with a return to prior "status." Returning to "custody" simply means returning to "the care and control of [another] for inspection, preservation or security." *Qasemi v. Francis*, No. 25-cv-10029, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025) (quoting Black's Law Dictionary 390 (7th ed. 1999) (alteration in original)). Thus, § 1182(d)(5)(A)'s mandate that an immigrant return to "the custody from which he was paroled" simply means that the immigrant must return to the "care and control" of the Department of Homeland Security. It says nothing about the "status" the immigrant will hold or the detention authority under which the government will operate once the parolee returns to such care and control. That work is done by the next clause of § 1182(d)(5)(A), which provides that the immigrant will be treated "in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Reading this language together, it is clear that, upon expiration of parole, an immigrant is to return to the custody they were held under before parole, and that their "status" will be that of "any other applicant for

8

admission."[5] The Court thus rejects the argument that, upon expiration of parole under § 1182(d)(5)(A), the former parolee reverts to the status they held at the time they were originally paroled.

* * *

In light of the plain meaning of the relevant statutes, the Court rejects the government's reading of § 1225(b)(1)(A)(i–ii) and § 1182(d)(5)(A). An immigrant is only "arriving in the United States" for purposes of § 1225(b)(1)(A)(i–ii) if they are in the act of reaching the United States. An immigrant who arrives and is paroled under § 1182(d)(5)(A) into the United States is no longer arriving in the United States, and expiration of such parole does not turn the immigrant back into an immigrant arriving in the United States.

Ontiveros, who at the time of her detention had lived in the United States for over a year, is not an immigrant "arriving in the United States" for purposes of § 1225(b)(1)(A)(i–ii). And most district courts in the Sixth Circuit to have addressed the issue in factually similar circumstances

---

[5] The Court in *Chirinos* also appears to base its conclusion on the statute's supposed incorporation of the so-called "'entry fiction' in which [immigrants] are legally considered as if they remained at the border throughout and after their parole[.]" *Chirinos*, 2026 WL 926941, at *11 (citations omitted). The court in *Chirinos* argues that § 1182(d)(5)(A)'s clarification that parole "shall not be regarded as an admission[,]" 8 U.S.C. § 1182(d)(5)(A), indicates Congress intended to perpetually treat parolees as "arriving" at the nation's borders. *Chirinos*, 2026 WL 926941, at *11. But this clarification is best understood as merely clarifying that parolees remain "applicant[s] for admission[,]" (i.e., immigrants present in the United States without having been admitted, 8 U.S.C. § 1225(a)(1),) and must still undergo the appropriate inspection process to obtain admission. It does not suggest Congress intended to incorporate the entry fiction and place parolees in a perpetual state of "arriving."

Further, the Court has serious doubts about using the entry fiction as a tool of statutory interpretation. As articulated by the Supreme Court, the entry fiction appears to be a rule for defining the *constitutional due process constraints* on Congress's treatment of certain immigrants. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139, 140 S. Ct. 1959, 207 L. Ed. 2d 427 (2020) ("[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated *for due process purposes* as if stopped at the border." (citations and quotation marks omitted) (emphasis added)). It does not appear to be a rule for interpreting the INA. *See e.g., Liu v. Almodovar*, No. 25-cv-9256, 2025 WL 3458633, at *4 (S.D.N.Y. Dec. 2, 2025) ("But the entry fiction isn't relevant to this analysis as it dictates what *constitutional* rights are due to a noncitizen who is physically present in the United States, and the question here is statutory in nature." (quotation marks and citation omitted) (emphasis in original)); *Guzman v. Weiss*, No. 6:25-cv-2146, 2025 WL 4657897, at *2 n.3 (D. Or. Dec. 8, 2025) (rejecting application of entry fiction to statutory interpretation); *see also Herrera v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 4:26-cv-125, 2026 WL 554707, at *14 (N.D. Ohio Feb. 27, 2026) (collecting cases rejecting use of *Thuraissigiam*'s entry fiction in interpreting § 1225(b)).

9

agree. *See e.g., Martinez Herrera*, 2026 WL 561101, at \*3; *Salgado Bustos*, 2025 WL 3022294, at \*5; *Badalov v. Noem*, No. 1:26-cv-162, 2026 WL 943586, at \*5 (S.D. Ohio Apr. 8, 2026). Because Ontiveros is not "arriving in the United States" and because the government does not argue that she is "described in clause (iii)" of § 1225(b)(1)(A)[6], § 1225(b)(1) does not apply. Rather, as an immigrant detained while "already in the country[,]" *Jennings*, 583 U.S. at 289, Ontiveros falls more aptly within § 1226(a)'s default rule and its bond framework. The government's application of § 1225(b)(1) procedures to Ontiveros's detention thus renders her detention "in violation of the . . . laws . . . of the United States[,]" warranting habeas relief. 28 U.S.C. § 2241(c).

### C. Whether Ontiveros's Detention Violates Due Process

Ontiveros further argues that her detention without a bond hearing violates her due process rights under the Fifth Amendment. (Doc. No. 1, at 6–7.) In response, the government argues generally that immigrants may be properly detained pending removal proceedings and concludes that Ontiveros's procedural due process claim must fail because "Congress chose to mandate [her] detention[.]" (Doc. No. 6, at 5.)[7]

---

[6] Even if the government argued that Ontiveros was described in clause (iii) of § 1225(b)(1)(A), the argument would likely fail. Clause (iii) describes an immigrant "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii). Ontiveros was paroled into the United States. (Doc. No. 1, at 2; Doc. No. 6, at 1–2.). The fact that her parole expired likely does not affect the analysis. A thorough statutory analysis by the D.C. District Court concluded that clause (iii) excludes anyone who has been paroled into the United States at any time regardless of whether such parole has since expired. *See Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 82–89 (D.D.C. 2025). And other district courts within the Sixth Circuit have adopted this reading of clause (iii). *See Martinez Herrera*, 2026 WL 561101, at \*4; *Salgado Bustos*, 2025 WL 3022294, at \*6. In any event, the Court need not decide the issue because the government has not raised it.

[7] The government also argues that Ontiveros's substantive due process rights were not violated. (Doc. No. 6, at 5–6.) The Court does not understand Ontiveros to raise any substantive due process arguments, so it will not address substantive due process here.

As a preliminary matter, the Court notes some question regarding the appropriate due process standard to apply in cases involving immigrants who were initially detained at a port of entry before being paroled into the country. Dicta from the Supreme Court's decision in *Thuraissigiam*, indicates that, for due process purposes, such immigrants are treated "as if stopped at the border[,]" *see Thuraissigiam*, 591 U.S. at 139 (citations omitted), and that they are only afforded the due process rights granted by Congress via statute, *id.* at 140 ("[A]n alien in respondent's position has only those rights regarding admission that Congress has provided by statute."). But, some district courts, ruling in factually similar circumstances, distinguish *Thuraissigiam*'s dicta and, instead, apply the familiar balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *See e.g., Badalov*, 2026 WL 943586, at *6; *Rodriguez-Acurio*, 811 F. Supp. 3d at 315–16. The Court need not resolve the question now because the government fails under either standard.

Assuming *Mathews* applies, Ontiveros's detention without a bond hearing violates her due process rights. To determine the process due under *Mathews*, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted). Here, the private interest at stake is the core liberty interest of being free from detention. *See Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." (citation omitted)). The risk of erroneous deprivation is significantly elevated by the government's refusal to operate under the appropriate statutory framework and provide Ontiveros a bond hearing, and such risk could be

11

mitigated by provision of the statutorily required bond hearing. Finally, the government provides no argument regarding its own interest in not providing Ontiveros with a bond hearing. Thus, under the *Mathews* analysis, the Court concludes that Ontiveros's detention without a bond hearing violates her due process rights.

That conclusion does not change under the lower due process standard contemplated in *Thuraissigiam*. Under that standard, Ontiveros is due the process provided for by Congress via statute. *See Thuraissigiam*, 591 U.S. at 140. But this Court has already found that the government failed to provide Ontiveros the process provided for by statute. (*See supra* § III(B).) Accordingly, even under the lower standard provided in *Thuraissigiam*, Ontiveros's detention without a bond hearing violates her due process rights. *See Badalov*, 2026 WL 943586, at *6 ("That defense [that petitioner was entitled only to due process rights afforded by statute] fails at the onset because the [c]ourt has held that [petitioner]'s detention is governed by 8 U.S.C. § 1226(a), under which bond hearings are provided, and not by § 1225(b)(1).").

The government's detention of Ontiveros violates her due process rights regardless of which of the potentially applicable due process standards applies. This conclusion accords with the majority of other district courts in the Sixth Circuit to have addressed the issue which have found that application of § 1225(b)(1) detention procedures to an immigrant governed by § 1226(a) violates due process. *See e.g., Badalov*, 2026 WL 943586, at *7; *Martinez Herrera*, 2026 WL 561101, at *5; *Salgado Bustos*, 2025 WL 3022294, at *7–8. Ontiveros's detention is "in violation of the Constitution . . . of the United States[,]" warranting habeas relief. 28 U.S.C. § 2241.

IV.    **CONCLUSION**

For the reasons stated above, Ontiveros's petition (Doc. No. 1) is GRANTED. The government is ordered to either release Ontiveros immediately or hold a hearing no more than

12

seven days from the date of this order to determine whether to release Ontiveros on bond pursuant to 8 U.S.C. § 1226(a) and consistent with this Court's determination. The Court ORDERS the government to file, within fourteen days from the date of this order, a certificate of compliance certifying that the government has complied with this order and stating whether Ontiveros remains in custody.

**IT IS SO ORDERED**.

Dated: April 24, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**